Our second case for this morning is United States v. Hawkins and Rakesi. This case concerns the mens rea requirement for bribery. The defendants have objected to the jury instruction defining corruptly. The instruction given by the court says that to be corrupt, the defendant had to know only that the person who gave the payment intended it as a bribe. The defense was that the defendants were deceiving the bribe giver, but they did not intend to do anything to… The district judge also instructed the jury that in order to convict of bribery, the jury had to find that the defendant accepted something intending to be influenced or rewarded. So what you got through the corrupt instruction was something about the intent of the payor, and then through the general intent instruction, the jury had to find your client's intent to do something. It looks like you got the best of both worlds. I would respectfully point out, Judge, that the second instruction that you're referring to allowed the jury to convict if they were either influenced or rewarded. Well, that's what the statute says. For example, the Second Circuit has suggested that the rewarded language is really aimed at gratuities rather than bribes. Exactly. So your client can be convicted even if your client didn't intend to do anything in exchange for the money. That would be a reward. That's a gratuity. So there are two possibilities. One is your client did intend to do something, then you're protected by this intent instruction. The other possibility is your client didn't intend to do something. I understand that was the defense, but under the reward section of 666, that defense was the same as a guilty plea. Well, under the way the instructions were given, that's right. The in connection with language is so vague that... But we're coming back to the corrupt. I don't understand how the corruption instruction could hurt. As 666 is worded, it looks like it prohibits the payment of any kind of gratuity regardless of the intent of the payor. And here, if the payor just wants to give a tip to a government worker, that violates 666. The corrupt instruction said, no, no, it violates 666 only if the payor intends to influence the behavior. So your client got a big benefit, maybe something not required by 666, out of that instruction. What I don't understand is how your client was deprived of anything to which your client was entitled. It's because... The case law from, we're going with case law from other circuits, and such as Gannon. But I'm worried about the language of the statute. Yes, Judge, but the case law indicates that to be influenced, you have to be influenced to do something improper. Look, what is it... But you're reading the word or rewarded out of the statute itself. That's what worried me about it. But what is it about the statute, what part of any intent requirement that you can find in 666 was missing from the jury instruction? 666 provides that the defendant has to act with a particular intent, either the intent to be influenced or the intent to be rewarded. And the jury was told that. So what intent thing was missing from the instructions? That it was a corrupt intent. And that's what the instruction we objected to would have provided. What makes it a corrupt intent is the intent to be influenced or rewarded. That's what 666 says. In order to... If you have one of those two intents, you violate the statute. But it's in order to improperly affect the business of the government. No, the reward part doesn't have anything to do with affecting the business of the government. The reward part says if you get tipped, you violate the statute, intending to be rewarded. If somebody came up to one of us before this argument and slipped us an envelope with $1,000 in it for showing up to hear the arguments, we would be violating the statute, even though we have to show up anyway and, you know, we weren't... Even though we're not influenced? Different. But we can't do that because of this statute. Well, I respectfully disagree with that. Well, you think it's okay for us to take... So you think we could accept the $1,000 and then offer Martin Manton's defense that we didn't change our votes? Under the... The question is, what you're doing is reading intent out of the statute. No. We're just reading the intent requirement of the statute to be exactly what it says, intent to be influenced or intent to be rewarded, one or the other. If you have one of those two intents, you violate the statute. It's right in the intent requirements, right in the text of the statute. And the jury instructions basically charged in the statute's language. You read Gammon, and Gammon is a case that the Supreme Court cited in Skilling as being a part of the core bribe and kickback law. Gammon approves a jury instruction that said the public official acts corruptly if he accepts a personal benefit with the intent to be improperly influenced or rewarded. And what does improperly mean? Well, if we look at United States v. Wright, the Third Circuit case, that's a case involving Skilling where the case was tried before Skilling and decided by the Court of Appeals after Skilling. The Court of Appeals found that there was not, that he may have been improperly, it was a plain error analysis, and they found that it had to be retried because the defendant took payments but may not have intended them to, may not have intended to be doing anything wrong. Wright may have intended not to be influenced but merely to do his job. In other words, he did not act corruptly even though he took some benefits. But what do you think the word rewarded means in 666 under the cases that you're talking about? We can't just delete it. I think the rewarded is the problem. If he accepted a payment without the intent to do anything improper, meaning corrupt, then my focus is on the word corrupt, not rewarded. You're missing the point. Suppose you said to me that if I vote for you, you'll give me $10,000. And suppose I say to myself, well, I'm certainly not going to alter my vote because of this money. But on the other hand, if I happen to decide in your favor, I'll be very happy to keep the money. Now, wouldn't that be a violation? Well, I think it would not be a violation of the bribery. You're opening up great vistas for us, right? Martin Madden actually offered that defense, but it didn't work. Well, this bribery law has evolved, and what we're dealing with here is a question of – But you're really saying that I wouldn't be violating the law in my hypothetical case. And if the jury found that you did not intend – Look, I gave you what the case was, right? You don't have to put in any ifs. I gave you all you needed to know, and you say that's not a violation of law. That's right, because it's not corrupt. Okay, well, if you want to save a minute for rebuttal, I'm not sure where you are at the moment, but probably rebuttal is a good thing to save. Ms. Winslow. Thank you, Your Honor. The second issue in this case is a guidelines issue. The district court applied a four-level increase to both defendants' offense level, finding that they occupied high-level decision-making or sensitive positions. The application notes for the guidelines indicate that a sensitive or high-level decision-making position is a person characterized by direct authority or substantial influence over direct authority. I apologize for my voice, Your Honor. You don't have to apologize to me. I can hardly hear. But here's my issue with that. Yes, Your Honor. As I understand the facts, this computer program spit out a bunch of potentially comparable properties, and it was then up to these defendants to choose the three or the four or the five or whatever the number for purposes of the assessment in question, and they could manipulate that choice in a number of ways. They could widen the perimeter of the geographic area. They could choose all the really low-priced ones to pull down the assessment, and the district court thought that that was, in fact, the kind of discretion that was being talked about in the guidelines and also that, on the whole and by and large, there wasn't a lot of review of that choice of comparables. So why aren't those fact findings to which we defer? Because they're not supported by the actual testimony in the case. Both Mr. Nyhan and Ms. Berrios testified that the computer program actually had substantial parameters that could not be altered by the I'm not saying that, but as long as the computer program is offering, say, ten properties and they're picking the five that are pushing in the direction they're trying to go in, that's all you need. The computer program, and I think I'm answering your question, the computer program itself limits the type of variables that can be present in the comparable properties. So what is the human being doing? If the computer is dictating the outcome, then your clients were defrauding the county by offering their services for any wage because they weren't doing anything. Judge, at a certain point, someone needs to review these and make a mathematical determination as to whether or not No, the computers make the mathematical determinations. In fact, in this case What the district judge found was that your clients were exercising discretion about which of the properties allowed by the program would be chosen as the best comparables. Now, if you're denying that that happens, you're really saying the computer is doing everything itself and no human intervention was required. Then I don't understand why your clients cashed their paychecks. The computer substantially limited their discretion. Some discretion remained, a very limited amount of discretion. However, that discretion was tempered by two levels of review following their initial decisions. But the district court found that that didn't mean much since the review tended not to go back and redo the selection of the comparables. It just was a more mechanical review. With all due respect to the district court, I believe the district court was mistaken. In fact, the subsequent levels of review reviewed the worksheet that had the actual comparables, the photographs, and the variables of those properties in front of them. If they had expanded their parameters to include, say, an empty lot in order to substantially lower the square footage tax rate, that would be evident to the next reviewer. So I believe that there was substantial review by the staffs of two additional. By the way, did anybody ever have discretion to compare an assessment against market transactions? Or were they only comparing one assessment against another assessment? One assessment against another assessment. Isn't that ridiculous? I do not endorse the system, Your Honor. Perhaps I agree with that. I reserve the rest of my time. Thank you. All right. Thanks so much. Ms. Greenwald. The jury was clearly instructed that to find the defendant guilty of bribery under Section 666, the government had approved and it had a fine that the defendant had the intent to be influenced or rewarded. The jury instruction tracked that statutory language and corruptly was defined as given in the pattern instruction to give the defendant, in essence, the best of both worlds because the jury had to find both that the defendant had the intent to be rewarded and influenced and also that the defendant knew that that's why the money was being paid to him. So there's no question really on this record and these instructions and the fact of this case that the jury was properly instructed and had a fine, the statutorily required mental intent for purposes of Section 666. So what about the honest services instructions? Yes. So the law does not require that the exact words quid pro quo be used, but certainly for bribery has in its essence an exchange. And as this court in essence recognized in G when it talks about the context of 666, the very language of that statute is premised on an exchange. You give me money for my influence, for my reward, for my performance of my duties, for my performance of additional duties. And that's the give and take. And in the facts of this case in particular, where you had an explicit and express agreement of the money, the quid, for the quo, you'll get these, will work to get you these reductions. There's no question that there was an exchange here, both on the instructions as given because it required that you have an influence and intent and that you understood that this money was being paid to you to influence. Was there a separate definition in the instructions of the word bribery? Excuse me, I'm sorry. Was there a separate definition in the instructions of the word bribery? There was a separate instruction of bribery. It basically tracked the language of section 666. But that's the problem, isn't it? If it tracks the language of 666, it defines bribery as an intent to be rewarded. And that's outside skilling. An intent to take a tip might violate 666, but it couldn't violate the mail fraud statute given skilling. Agreed. So if bribery is defined to include reward, we have a problem under skilling, do we not? You could in other cases. So totally agree, Your Honor. Why in other cases? If the instruction on the meaning of the word bribery is wrong as a matter of law, all you've got left is a harmless error argument. It's wrong as a matter of law in this case, not in some other case. Reward in that statute certainly can encompass gratuity. But it also can't. But that's their argument. And there was a lot before the jury that maybe the payor was hoping for a quid pro quo, but there was no quid pro quo. They conceded in this case, both in the district court and for purposes of appeal, that this was not a gratuity case, that reward wasn't used in the sense of gratuity in this case, nor was that the government's theory of prosecution. You think the government? I'm sorry. You think the defendants conceded that? They did, Your Honor, in several places. They conceded it in their post-trial filing for sure. There's a discussion of the Ferguson case out of the First Circuit in saying, but we concede this was not a gratuity case. And they certainly haven't suggested it's a gratuity case on appeal. I do not recall if they expressly conceded it in their brief, but they definitely conceded it in the district court, and they did not argue that this was a gratuity case. And the government's posture and use of the well, the government totally agrees with the court that you can be guilty of a section 666 based on gratuity, totally and completely, and that their 666 conviction could stand on that basis. As to the 1346, the government also agrees with the court that it required a bribery as the basis of skilling. But in this case, on these facts, that was the government's theory. That was the defense theory. That was what the evidence was, that this was a bribery. Then what's the word reward doing in the definition of bribery? The word reward was used by the government in this case and understood in the context by even the district court as being a version of we are doing this for you, whether we intend to be influenced by it or understanding that you're rewarding us. But that can't be right. That is so far away from what skilling was saying that it just can't be right. Well, I believe what skilling was saying was that it's an exchange. It's a this for that. And a reward can be an exchange. I believe what was happening with this statute. 666 says intent to be influenced or rewarded. It's contrasting influence as changing your behavior with reward being paid. I understand that that's a real difference. And then you've got a definition of bribery that lumps the two together. Skilling was talking about the first, being influenced, changing your behavior as a result of being paid. And this instruction does not tell the jury it needs to draw that. I would disagree. Trying to talk over the court doesn't help you. This instruction does not draw that difference. This is under 201, under Paletti in this court's decision and section 201 bribery, which is specifically referenced in skilling,  his subjective intent could be to do the exact same thing he was ever going to do. But if he agreed, if he told the other person that's what he's going to do, he's guilty of 201 bribery. That's black letter law. And that's considered a crime under skilling, a bribery for purposes of skilling. So the sense here is the subjective intent of this defendant, whether you call it a reward or to be influenced, in the context of this case where there was an actual exchange, that word was understood as bribery. But even, Your Honor, if we go to harmless error, even if this reward word in this instruction created an issue here in terms of skilling, the error is necessarily harmless here. It's necessarily harmless because this case was argued by both parties as an exchange case, as in fact an influence case, and the jury was instructed to find that it had to find one of the specific allegations of bribery described in the indictment, which describes it as an exchange, that they're accepting this money in return for, in exchange for efforts to reduce these taxes, and they had to find one of those briberies. And it's how it was argued and certainly what the facts support here. The only facts in this case were in express, an explicit agreement, on tape, captured on tape. Are you saying reward had no actual function in the case, even though it was mentioned in the instruction? In essence, it was understood. That kind of reward case that we were talking about, that's not quite bribery. It's something else, right? And the defendant's theory was, you know, 80% of these assessments go down when somebody raises a fuss about it and they were sailing along, just letting the process happen the way it was and collecting some money for it. That sounds like a reward to me. That doesn't sound like skilling-style bribe, you know, quid pro quo. Their defense was we didn't intend to be influenced at all. And we couldn't be, I mean, they said, because the computer is constraining our discretion so much. But then the instruction shouldn't have contained that reward, right? I mean, that's the problem with reading a statute in a jury, right? As the instructions initially proposed by the government did not include the word they were instructions that talked about, you know, in return for and in exchange for an official act. The district court found in its discretion that that would be confusing to the jury to have two theories of bribery. And so it went to the jury on this. But the government's theory of the case remained the same and the evidence remained the same, which was that this was a case where the express agreement was, we never argued this as a gratuity, we never argued this as anything other than, because it was on tape, as an agreement between the defendants to take action, to be influenced, to do something to lower these taxes on a guaranteed basis, to work to do that in exchange for money. And that they intended that. That was their intent. They intended to be influenced. And, in fact, the evidence showed they did do things that weren't in the normal course of their business. It's not in the normal course of your business to fill out the forms and sign, forge the signature of the owners of the condominiums and then file those. It's not in the course of their business to have another employee who's in charge of doing the condominium reductions call the Haleem, the payor, and say, I'm working on your reductions. Right. So, I mean, you're arguing right now as though this were a sufficiency challenge. Yes. And I don't think it is that. But in any event, it's challenged. To whether there was a possibility of something wrong. Yes, Your Honor. On the guideline issue, the district court was not clearly erroneous. First of all, the evidence was that the computer did the grunt work. It generated these properties. Does the evidence show how many possible comparables the computer spit out each time? Yes, Your Honor. Yes, it does. Our expert testified that it could be as many as 10 or so. Their expert testified it could be several hundred, depending on the property. And how many wound up getting used on the stores? And they would narrow it down to a few. What's a few? There wasn't a specific number, but it could be three or four. It could be 10. It was a specific number lower than what was generated. And what's more, they had assigned those certifications that they made their analysis honestly and fairly and equitably based on the evidence presented. There would be no reason for making such certification if it was just a rote matter of copying down numbers. And in terms of the review process, again, it was their expert who said they don't go back to the computer-generated things. They just look at the comparables that have been chosen already and see if those make sense. They only go back if there's some question raised. Was there any discussion of the fact that their charges, the bribes, seem to have been extremely modest? Extremely what? Sorry? Modest. Modest? You mean the amount? Well, $150, that was the second one. But the first one wasn't modest. It was $1,500 for the three houses. Okay, but the $150? And the idea was they were going to be paid more. He only had $30 in his pocket at the time. But the idea was this was an ongoing kind of thing where Halim was going to be bringing them more and more properties, and they would be doing this over time, and they'd charge like $150 a condo, maybe more for houses, more for people they didn't know. The whole idea was this was an ongoing conspiracy, not going to be just these few. So if the Court has no other questions, I would just like to use my remaining second just to say that to the extent the Court does have issues and concerns about the honest services, we strongly feel that at the very least on a harmless error basis the evidence was overwhelming and should be sustained beyond a reasonable doubt, and we would respectfully ask the Court to affirm both the convictions and the sentences for the reasons presented here as well as in our briefs. All right. Thank you very much. Anything further, Mr. Beal? With respect to the payment, Halim decided how much the payment was. He decided the $1,500 and the $30. They didn't charge. They just took whatever he gave them. Secondly, they argued the reward. They said when they accepted, during closing argument, when they accepted a $1,500 bribe payment, they were accepting a reward, and that encompassed both of the charges. So in other words, you're saying there was no waiver of that theory? Yes, Judge. And then finally, just to be clear about what happened, how this worked. The analyst would sit at his computer. He would put in the property index number. The computer would pop up so many comparables. He was supposed to see if there were comparables below the subject property because the purpose was to give a reduction if you could, if you could legitimately do that. Why is that the purpose? I mean, that sounds so bizarre to me. It seems like if Cook County is happy with the assessment, why are they going to go lower? Because this is a political thing to give 80% of the taxpayers who apply a reduction. And all the analyst did was just to pick the three or four lowest, in this case the three lowest, and push the enter button. The computer then calculated what that meant. The analyst looked, found where there are three or four below the current assessment, clicked those, pushed enter, and the computer took it from there. I agree with Judge Easterbrook. I don't know what these guys were collecting their salary for. But the logic of your argument is that the tax would go to zero, right? Because every time you lower the tax on one property, that goes into the computer, right? And then anyone charged more than that says, well, wait a second. Well, I mean, the way it works, 80% of the people in the county is bankrupt, so maybe this is part of the policy. But the point is they had virtually no discretion. And then the other analyst would look to see that they were legitimate comparables. That was the other analyst's function. All right. Thank you very much. Anything further, Ms. Winslow? No, Your Honor. Okay. Thank you to all counsel. We will take the case under advisement.